APPELLATE CASE #_____

| | | |
|---|---|---|
| Colin O'Kroley | } | |
| Appellant (Pro Se) | } | In the United States Court of Appeals |
| | } | for the sixth circuit and in the United |
| V. | } | States District Court for the Southern |
| | } | District of Ohio |
| | } | Cincinnati, Ohio |
| FASTCASE INC, GOOGLE, TEXAS | } | |
| OFFICE OF COURT ADMINISTRATION, | } | |
| 11TH COURT APPEALS, YASNI.COM, | } | |
| | } | |
| Defendants | } | |

## Notice of Appeal

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Colin O'Kroley, Appellant in the above styled and numbered Cause (which is
related to District Court case No. 3-13-0780 {a.k.a. 3:13-cv-00780} in the Middle District of
Tennessee (and, arguably the appellant believes is also related to other court cases including
11-12-00056-CV (11th Court of Appeals Eastland TX) (because their opinion was what was used
to help 'derive' the defamatory snippet)), and makes this Notice of Appeal and respectfully
shows as follows:

A. Judge Campbell and the lower Court notified the appellant of the granting of the various

and/or final defendant's motions to dismiss. Appellant received last said notice 11-6-2015. Said notice was dated 11-2-2015 and post-marked 11-3-2015 therefore this notice of appeal is within 30 days of said notice and timely.

B. Appellant claims surprise in case vs. Google because a "new case" was cited in the judge's paperwork (*Jones v. Dirty World Entertainment Recordings LLC*, 2014 WL 2694184 at * 6 (6th Cir. June 16, 2014). Since Google Inc, never delivered a copy of their response to the Appellant, the Appellant never had an opportunity to respond to this argument nor is he even aware of the details of the case at the present time. Nonetheless, the judge ADMITTED he could not find a case like the plaintiff's so the Appellant is led to believe this "new case" suffers the same flaws the other cases cited have. Appellant is also led to believe this "new case" is a 'last ditch' effort to try to support the ILLOGICAL CONCLUSION the judge made in his paperwork.

C. The judge's decision is ILLOGICAL. That is, the judge DETERMINED the underlying content was not defamatory and the judge DETERMINED that Google's snippet IS DEFAMATORY, THEREFORE the ONLY LOGICAL CONCLUSION the judge could have reached was that GOOGLE TRANSFORMED the underlying content to make it DEFAMATORY!

D. Since Google TRANSFORMED the content, Google is an information content provider (they also are traditionally and incidentally an internet service provider).

E. The judge attempts to "dance around" the logical conclusion the facts require by claiming Google is 'merely' an "internet service provider" that 'merely' "altered" the underlying content. In his effort to rationalize his illogical decision the judge IGNORED the definition provided by the magistrate judge that "drops" the word 'altered' altogether for the purpose of establishing immunity. The judge (and the magistrate judge) also IGNORED that in the Metrosplash case the judge stated that the information content provider (not an internet service provider) was responsible for the underlying MISINFORMATION. Judge Campbell also IGNORED the

plaintiff's arguments that Google's alleged automated editing process is DEFECTIVE and/or NOT automated because a search for 'Ray Pringle' displayed a 'correct' snippet without the same error that occurred when the plaintiff's name was searched. The Judge IGNORED the fact that the alleged automated editing process is an AFFIRMATIVE DEFENSE that must be proven - and it never was. The judge also never bothered to try to distinguish what the difference is between "altering" and "transforming". (One of the Appellant's dictionaries shows the words are synonyms.) The law allegedly allows Google to "alter" but not to "transform" content. The judge IGNORES that the spirit of the law does not allow Google (whether in a civil conspiracy with co-defendants or not) to "make up new content that is defamatory with immunity".

F. The judge IGNORES all of the different attacks the Appellant makes on Google and the cda law and "sweeps them under the rug" by not addressing them. For example, the snippet Google creates refers to a LEGAL DOCUMENT. Legal documents must be able to withstand "scrutiny" or else be 'reversed', 'remanded', or 'dismissed' etc. The legal document (snippet) Google created was created by DENYING THE APPELLANT HIS CONSTITUTIONAL RIGHTS! The Appellant has a right to face his accuser, the appellant has a right to due process, and the appellant has a right to be free from cruel and unusual punishment. All of these rights the appellant is afforded by the U.S. Constitution were 'trampled on' and the excuse given was that "It's legal under the cda." For this reason the CDA is UNCONSTITUIONAL and must be STRUCK! (and/or repealed)

G. The CDA is also 'ANCIENT' in today's fast-paced digital world. The cda was allegedly created to 'foster the fledgling internet industry' however, in this case the "Number one company in the world" is claiming that they need 'coddling' under the cda to 'foster' their business. For this reason the CDA must be repealed and/or struck.

H. The appellant has to speculate what was in Google's final response but he can guess they

argued about the hypothetical examples the appellant provided. Appellant argues, (if this came up), that he only had 10 days or so to respond (waiting the full14 led to earlier paperwork being "lost") which is an inadequate amount of time to respond. Also, since the "free market" failed to match the appellant with an attorney, and the Court IGNORED the appellants request for a court-appointed attorney, the plaintiff claims inadequate representation and also a violation of his rights under the 14th amendment since the Court is creating a 'subset' of the population that gets lawyers and another 'subset' of the population that doesn't.

I. The Appellant urges this Court to approach the authors of the CDA with this question: When you stated the words 'altering' and/or 'editing' did you ever consider that one could completely reverse the meaning of the content? For example, did you mean when you wrote the law that it should be legal to "spell check" someone's comment of "Eff you!" to "Bless you!" thereby completely reversing the meaning of the comment with immunity? Is that the spirit of the cda?

J. With the after-acquired evidence doctrine the appellant will show Google is now deliberately defaming and 'cyber-bullying' the appellant by unnecessarily publishing the snippet hundreds of times on the internet in a manner that is INCONSISTANT with other snippets about legal matters which Google has published.

K. Fastcase and/or Google and/or 'Texas Courts' are engaging in an 'abuse of power' by attempting to implement the 'old saying' Dr. Phil recently quoted on his television show:

"We have an old saying in Texas: 'You may beat the rap, but you won't beat the ride'"

Essentially, Texas, and now apparently the U.S., are under the impression that if they cannot bring a case forward in Court (because they don't have one), they can bring the case to the public and try to get a 'victory' in the 'court of public opinion', by harassing and cyber-bullying people they 'don't like' on the internet or in their local communities. Tell 'Texas Courts' and/or 'fastcase' and/or 'google' etc. that if they have a case to "bring it or go home!" and quit violating

innocent citizen's constitutional rights! They're also so ridiculous they don't even bother to do more than "thinly veil" their intentions using 'jargon' like "Fastcase" (i.e. without a trial / due process) and "TechDirt" (e.g. we use "technology" to make "dirt" on whoever we want to make look bad - (such as our adversaries in Court).

L. Another fact "swept under the rug" was the fact that I did not authorize Google to use my name for any reason. Google's use of my name without my permission is in violation of TN law.

M. Google's search engine, and the internet in general, need to "grow up" as other tele-communications companies have and offer the equivalent of "unlisted numbers" and "do not call" lists. In this case, it would be an "unlisted person", a "do not search" option or a "private person" result (or something to that effect).

N. Please see documents filed earlier for other issues that were "swept under the rug" such as "cyber-bullying", different 'legal frameworks' presented for the court to consider regarding re-pleading etc., or since apparently this is just the "notice" or "request" for interlocutory appeal, appellant reserves the right to revise and/or expand this document and "re-submit" it later.

O. Appellant objects to and wishes to appeal the lower Courts apparent decisions not to seal records and allow anonymous filing. Appellant requested "seal records" and "anonymous filing" in writing on original pleading paperwork. The failure of the Court to hear and grant these 'motions' has aided Google and/or other potential defendants, etc. in cyber-bullying as noted in "J" and "K" above. The Court should be able to discern all of the following: 1. "Standard practice" in "commerce" and, for instance, in medicine, is to take a clients money and "do no harm" to the client or patient. The FTC even has laws governing these matters. 2. The Court should not be "above" FTC law - particularly in light of the facts proven by "project innocence" etc. where it appears the Court is OFTEN WRONG - even when it "thinks" it is "operating correctly". - Other 'debacles' in the justice system now include: 'eyewitnesses are unreliable', 'no two fingerprints

are alike' has now been refuted, 'confessions' (typically made under extreme duress) are unreliable, police "lineups" are unreliable and even when proven that Courts decisions are wrong the Courts / States / etc. are extremely slow to 'respond' in a 'just' manner to its own mistakes. 3. Also, the lawyer-litigant "Free market matching system" appears to be inadequate with some lawyers claiming that they will not take a case that is worth less than $100,000 in potential awards. On the other end of the spectrum, unscrupulous attorneys take client's money "on retainer" or even worse "to evaluate a case" and subsequently "drive the case into the ground" or refuse the case altogether (even for dubious or unknown reasons). The three

David Camm decisions (IN (or PA)) have also demonstrated that jurors are capable of "lynch-mob type behavior" and a recent case in Montana or Wyoming demonstrated that judges who try to "go against the lynch-mob" in a given locality run the risk of losing their jobs. 4. Such "problems" result in inaccurate "public records" because there seems to be a variety of way to lose a case (such as inadequate representation) including inadequate funds - ( where the litigant with more funds "smokes out" the other litigant). 5. The Court is also "backward" when it comes to violating the 14th amendment and unconstitutionally protecting one group of citizens (some of whom do not even have the wherewithal to take illegal extra-legal action) while 'exposing' another group of citizens (who do have more wherewithal) by not allowing them to file anonymously. 6. In should go without saying that there is little to no benefit in restricting litigants from filing anonymously - in fact, it's possible that a new form of discrimination (litigious discrimination - or discriminating against the litigious) is being created by the restricting. 7. Unless one's (numerous) lawsuits are all frivolous the restriction should be lifted. 8. The Court is effectively "icing" the general population, especially in slander suits, by publishing the slander as it settles the issue. 9. It also defies common sense to make a problem presented before the Court worse. 10. Therefore, plaintiff objects to and wishes to appeal the 'decision' made to deny him the ability to file anonymously. 11. Similarly and likewise plaintiff wishes to appeal the 'decision' denying him the sealing of the records of the case.

P. Appellant objects to and wishes to appeal the 'decision' not allowing him to re-plead the case. This is due to O.)3.) above and because the appellant submitted a request for a court appointed attorney. The plaintiff lacked adequate representation. The Judge was vague and too broad as he refused to allow re-pleading and speculated about its necessity. Also, plaint objects to and wishes to appeal the 'decision' of the judge to 'not be an advocate' for the litigant. Since the free-market cannot effectively match lawyers with litigants, the Court aggressively withholds information from litigants, and the appellant's request for court appointed counsel was denied (in violation of the 14th amendment) the judge was not 'doing justice' by either being vague and/or too broad or by 'not being an advocate' of the appellant (or any litigant).

Q. Appellant objects to and wishes to appeal the court's refusal to hear the 'Impersonation of a judge' charge. The criminal code is supposed to be reflected in the civil code. In fact, all criminal codes should be either included in the 'arsenal' of plaintiffs and prosecutors or 'cross-referenced' to civil codes so litigants do not have to file multiple cases.

R. Plaintiff objects to and wishes to appeal the Court's 'decision' not to consider arguments regarding the use of the appellant's name in ads and in the 'promotion' of 'snippets' and their 'links'.

S. Plaintiff objects to the argument that the isp (Google) is '... not responsible for the underlying content regardless of the editing process..." because in this case the judge determined that the underlying content was NOT defamatory. Therefore, with respect to their defense this argument is irrelevant. Alternatively, if the argument is allowed, it actually supports the plaintiff's case because the snippet is defamatory and, again, the judge ruled the underlying content was NOT defamatory, therefore logic dictates that Google TRANSFORMED the non-defamatory underlying content into the defamatory snippet thus making them and internet content provider in this case (as well as the internet service provider (their usual function)). (See also C above.)

T. Furthermore, if the logic in S above is 'escaping' this court (as it escaped the judges in the lower court), this court can also consider a (for now) hypothetical p-value statistical approach to the case:

According to the book "Statistics for Managers using Microsoft Excel" (4th edition (pp340-341)) by Levine, Stephan, Krehbiel, and Berenson there are 10 steps of Hypothesis testing using the p-value approach:

1. State the Null Hypothesis, $H_0$.

2. State the alternative Hypothesis, $H_1$.

3. Choose the level of significance, $\alpha$.

4. Choose the sample size, $n$.

5. Determine the appropriate statistical technique and corresponding test statistic.

6. Collect data and compute the sample value of the appropriate test statistic.

7. Calculate the p-value based on the test statistic. This involves:

    a. Sketching the distribution under the null Hypothesis $H_0$.

    b. Placing the test statistic on the horizontal axis.

    c. Shading in the appropriate area under the curve, based on the alternative hypothesis $H_1$.

8. Compare the p-value to $\alpha$.

9. Make the statistical decision. If the p-value is greater than or equal to $\alpha$, the null hypothesis is not rejected. If the p-value is less than $\alpha$, the null hypothesis is rejected.

10. Express the statistical decision in the context of the problem.


So, hypothetically speaking, something like the following could be used for the present case:

1. $H_0$ : Google did NOT transform the underlying content to create a defamatory statement.

2. $H_1$ : Google did transform the underlying content to create a defamatory statement.

3. $\alpha = 1\% = .01$.

4. Choose the sample size, $n$. $n = 100{,}000$ snippets.

5. Determine the appropriate statistical technique and corresponding test statistic. A one-tailed test could be used or perhaps a two-tailed test. In the two-tailed test, the 100,000 snippets could be "rated" from 0 to 100 where 0 is an extremely positive snippet transformed from neutral underlying content and 100 is a defamatory snippet transformed from non-defamatory (or 'neutral') underlying content. In this hypothetical example the mean would be 50 and would represent a neutral snippet edited from neutral underlying content.

6. Collect data and compute the sample value of the appropriate test statistic. This has not been done yet. The plaintiff objects to doing this because he is not an expert so even if he did it the court may rule the evidence be thrown out.

7. Calculate the p-value based on the test statistic. This involves:

   a. Sketching the distribution under the null Hypothesis $H_0$. (see below)

   b. Placing the test statistic on the horizontal axis. (see below)

   c. Shading in the appropriate area under the curve, based on the alternative hypothesis $H_1$. (see below)

8. Compare the p-value to $\alpha$. Plaintiff will assume for this hypothetical example that the snippet in this case is "one of a kind" and thus the p-value is 1/100,000 or .00001.

9. Make the statistical decision. If the p-value is greater than or equal to $\alpha$, the null hypothesis is not rejected. If the p-value is less than $\alpha$, the null hypothesis is rejected. In this hypothetical example the p-value (.0001) is less than $\alpha$ (.01), therefore the null hypothesis that Google did NOT transform the underlying content to create a defamatory snippet is REJECTED.

10. Express the statistical decision in the context of the problem. This is just a rough hypothetical example to demonstrate to the court that if the court is unable to grasp the logic in S above, a statistical solution is available to the court to determine its ruling in this case.



It would be far easier to simply "follow the logic" and realized that if the underlying content was NOT defamatory, logic dictates that Google MUST HAVE transformed it to make their defamatory snippet. Google's transformation of the content makes them an internet content provider in this case, (as well as the internet service provider) and therefore they are liable for their defamatory transformed content. Furthermore, their argument that they are not responsible for the underlying content regardless of the editing process is irrelevant because the underlying content was not defamatory.

Alternatively, if the court accepts the argument that Google is not responsible for the underlying content regardless of the editing process, the court is failing to recognize its own determination that the underlying content was NOT defamatory and therefore NOT the 'source' of the defamatory content in this case.

In short the lower court's ruling is totally illogical and they 'parse' the part of the sentence that says '...regardless of the editing process...' and 'couple it' with Google's traditional business practice of being 'only an internet service provider and not an internet content provider' to try to 'wriggle' out of their own illogical conclusion which must now be reversed.

U. A similar approach could be used on the response times of the recommendations of the magistrate judge over a given period of time to ensure there was no "hokery pokery" in the judge's chambers in this case (as there appeared to be in the 244th district in TX when the plaintiff was not notified of one hearing, was not represented at another "secret hearing" that

was not on the record, when the disqualified judge signed order(s), and when Judge McCoy "pre-determined" his ruling by consulting a database and/or other judges in the case prior to his hearing related to the matter, etc. etc. etc.).

V. Illogic was also used in the judge's decision to dismiss the case against Fastcase because the judge, in essence, ruled that the plaintiff was adequately represented while simultaneously refuting that ruling by claiming the plaintiff did not follow the courts rules. Also, the Courts decision to "tip off" the defendant by publishing the papers being served on the defendant on the internet prior to the arrival of the 'snail mail' containing said papers, refutes the Courts argument that the plaintiff did not adequately serve the defendant and the Court's publication was akin to an obstruction of justice. Also, the onus should be on the defendant to attempt a motion to dismiss. The Court displayed its bias by assuming the onus of the defendant. The Court also displayed a bias by making an error of omission in its recommendation regarding the service (by not stating what rule the plaintiff allegedly did not adhere to while serving this defendant) and/or by committing perjury or displaying incompetence by suggesting that the plaintiff "did nothing" when in fact the plaintiff explained to the court that he followed state law. A p-value approach might be possible in the case against Fastcase as well therefore the plaintiff has grounds for a new trial. Actually, this argument (new grounds) using the p-value approach likely applies to all of the defendants.

W. Texas Courts also needs to be brought back into this case because the lower court misconstrued the plaintiff's response as "... there being no objections ..." when, in fact there were many objections (which the court apparently did not read).

X. Yasni.com should also be brought back into the case because, again, the lower court failed to state what specifically was wrong with the service they were given and because the onus should be on the defendant to make a motion to dismiss and not the court (so, also, the court was biased (again)). Also, the plaintiff noted and the court ignored that Yasni.com has indirectly responded to this case by responding to a related European Court ruling. Also the plaintiff noted

and the court ignored that Yasni.com was making a mockery of said ruling by ultimately publishing that which the European court prohibits them from publishing.

## PRAYER

Appellant prays that this Court "see through" all the nonsense being put forward as 'logic' by the lower court, reverse the decisions to dismiss that were previously granted, and "clean up" some or all of the unconstitutional (and/or inherently unfair) activities denoted above. Also, if the Court would prefer all of the above issues in question form, to please notify the appellant of said preference. Plaintiff also hereby requests a court-appointed attorney.


Respectfully submitted under duress and against my will,


11/28/2015

Colin O'Kroley, Plaintiff (Pro Se)                    Date
785 Parker Creek Rd
Bon Aqua, TN 37025-5036
Ph: 931-623-1824
Ph: 931-623-8291
colinokroley@aol.com

## CERTIFICATE OF SERVICE

I certify that a true copy of this Notice of Appeal was sent to the Defendants or their attorneys of record by next day mail and/or certified mail, return receipt requested on November ,28th, 2015 from Dickson_____, TN

Eric P. Schroeder

BRYAN CAVE LLP

One Atlantic Center - 14th Floor

1201 West Peachtree Street, NW

Atlanta, GA 30309

404-572-6600

Eric.schroeder@bryancave.com

Also delivered and/or mailed to:

Clerk

U.S. District Court

800 U.S. Courthouse

801 Broadway Room 800

Nashville, TN 37203

Court of Appeals

540 Potter Stewart U.S. Courthouse

100 East Fifth Street

Cincinnati, OH 45202

Ph: 513-564-7000

Robb S. Harvey
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

Scot M. Graydon, Assistant Attorney General
Office of the Attorney General
General Litigation Division
One Atlantic Center - 14th floor
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

Fastcase, Inc. a.k.a. Fastcase.com, Inc.
Attn: Ed Walters, CEO
1155 15th St NW Suite 1000
Washington, D.C. 20005

And by first class mail to:    Yasni GmbH
Attn: Steffen Ruehl (a.k.a. Steffen Ruhl), CEO
Lyoner Str. 14, 60528 Frankfurt am Main
Germany

This 28th day of November, 2015

Colin O'Kroley, Plaintiff (Pro Se)
931-623-8291          931-623-1824
colinokroley@aol.com